UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.

JOSEPH COFFEY and
ZACHARY AUSTIN,

Defendants.

Case No. 1:24-mj-244-01/02-AJ

### AFFIDAVIT IN SUPPORT OF
### CRIMINAL COMPLAINT

I, Robert Lukacz, being duly sworn, state under oath as follows:

Introduction

1. I submit this affidavit in support of a criminal complaint charging Joseph Coffey ("COFFEY") and Zachary Austin ("AUSTIN") with conspiracy to distribute methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) and 846. I am a police officer with the Portsmouth Police Department and have been employed as a police officer since 1998. I am also designated as a task force officer with the United States Drug Enforcement Administration ("DEA"). The facts set forth herein are based upon my own work on this investigation and discussion about the investigation with other law enforcement officers. In submitting this affidavit, I have not included every fact known to me about the investigation but only the facts that I believe are sufficient to establish probable cause for the crime set forth in the accompanying criminal complaint.

Probable Cause

2. In connection with this investigation, I have worked with a DEA Confidential Source ("CS"). The CS has a prior criminal history to include a domestic-related assault and was

recently charged with New Hampshire state charges for witness tampering and drug possession. Since then, the CS has agreed to cooperate with law enforcement in the hopes that such cooperation will be looked upon favorably by the court in his/her pending criminal case. No express promises of any kind have been made to the CS in exchange for his/her cooperation. I have corroborated the CS's information as described herein and therefore find he/she to be reliable.

3. The CS told me that he/she previously purchased crystal methamphetamine from COFFEY. The CS advised that COFFEY does not have a driver's license, and therefore, that he/she typically purchased drugs from COFFEY at COFFEY's residence. The CS believed COFFEY resided at 2 Waterford Way, #108, Manchester, NH ("the Waterford Way Residence"), an apartment leased in AUSTIN's name.

4. On July 10, 2024, the CS conducted a controlled purchase of methamphetamine from COFFEY at the Waterford Way Residence.[1] AUSTIN and COFFEY were both present while COFFEY provided the CS approximately one ounce of a clear rock-like substance consistent in size and appearance with approximately one ounce of methamphetamine in exchange for $600. Lab results remain pending.

5. Between July 12 and 18, 2024, at the direction of law enforcement, the CS exchanged text messages with COFFEY in an effort to arrange for the purchase of a half-pound of methamphetamine. The CS and COFFEY agreed on a price of $1,800. On July 18, 2024, the CS went to the Waterford Way Residence to conduct the purchase. Both COFFEY and AUSTIN

---

[1] For each of the controlled purchases discussed herein, the CS was equipped with recording equipment, searched before and after the purchase for drugs and money with negative results, and kept under surveillance whenever possible.

2

were present in the residence. The CS told agents that COFFEY was weighing the plastic bag of methamphetamine when she/he arrived. As a means of introducing an undercover law enforcement officer to COFFEY, the CS offered to introduce COFFEY to a drug customer from northern New Hampshire. AUSTIN participated in the discussion. Specifically, while discussing ways to meet the potential customer, AUSTIN suggested renting a room further north to meet with the CS's prospective buyer. The CS exchanged $1800 for a clear rock-like substance that lab results later confirmed contained methamphetamine.

6. On that same day, the CS texted COFFEY about his roommate AUSTIN being present at the previous purchase. He wrote, "Not going to lie I was little nervous with your roommate around obviously, he's cool…" COFFEY replied, "Yeah, he's my business partner, if your [sic] trust in me trust I won't have anyone around that shouldn't be."

7. On August 4, 2024, a task force officer acting in an undercover capacity ("UC") began a series of text messages with COFFEY negotiating the purchase of a half-pound of methamphetamine and a suitable meet location for the drug deal. The UC and COFFEY planned to meet the next day, August 5, 2024, in the parking lot of the Brook Casino located in Seabrook, NH. The UC was messaging COFFEY at the same phone number used by the CS to communicate with COFFEY to arrange the previous controlled purchases. Phone records confirm that COFFEY is the subscriber of that phone number.

8. On August 5, 2024, surveillance units set up in the area of the Waterford Way Residence. Surveillance observed AUSTIN, alone, exiting the parking lot in a vehicle registered in his name at the Waterford Way Residence. Shortly thereafter, COFFEY called the UC and said he was unable to make it out to the Brook Casino to meet with the UC. The UC and COFFEY agreed to meet in the parking lot of COFFEY's apartment complex (i.e., the parking lot

3

adjacent to the Waterford Way Residence) later that evening. The UC arrived and COFFEY entered the UC's vehicle and exchanged a clear rock-like substance consistent in appearance with methamphetamine for $1,800. The UC asked if the price would drop if he purchased larger amounts. COFFEY stated it would but there might not be a price drop unless he was buying 5-10 pounds of methamphetamine at a time. COFFEY stated that he should be able to fill most orders in about one day's time. During the conversation COFFEY relayed that his source was a Hispanic male and that the source was located about half an hour south of COFFEY'S residence. At one point, the UC offered to drive COFFEY south to resupply. COFFEY stated that he had someone specifically for traveling down to Massachusetts. The UC told COFFEY he used to go to Lawrence 3-4 times a week and COFFEY smiled and said, "Yeah, that's real close by." Based on my training and experience, I know that Lawrence is one of several Massachusetts cities that are known source cities for narcotics being trafficked into New Hampshire. Lab results later confirmed that the substance purchased by the UC contained methamphetamine.

9. The UC and COFFEY continued to negotiate via text message the purchase of one pound of methamphetamine and agreed on a price of $3,300. Near the date of the exchange, which was planned for August 26, 2024, COFFEY texted the UC that he only had 15.5 ounces of methamphetamine on hand for the UC to buy. The UC and COFFEY agreed to meet in the parking lot of COFFEY's residence, the Waterford Way Residence, where the UC would purchase 15.5 ounces, and provide COFFEY with the money to purchase the additional half-ounce owed to the UC. Specifically, COFFEY said he would go back into the Waterford Way Residence, give the money to his "dude" who would then drive a half hour south, meet with their source of supply, purchase methamphetamine, and return to the Waterford Way Residence. The UC and COFFEY would then meet again in the parking lot and COFFEY would give the UC the

4

remaining half ounce. Surveillance units planned to follow COFFEY's "dude" to their source of supply and follow them back to the Waterford Way Residence.

10. On the morning of August 26, 2024, in anticipation of the pending deal, surveillance units set up in the area of the Waterford Way Residence. At approximately 2:03 p.m., the UC drove to the parking lot of the Waterford Way Residence and COFFEY entered his vehicle. COFFEY told the UC he was another ounce short as he had to give his roommate an ounce. COFFEY removed a gray plastic shopping bag from inside his shirt. The UC inspected the bag and noted there was a Ziplock bag inside that contained what appeared to be methamphetamine packaged in one ounce and half ounce bags, consistent with approximately 14.5 total ounces. COFFEY stated that it would take his runner about an hour to pick up the remaining portion. The UC provided COFFEY with $3,300 and said he would be back later to retrieve the remaining methamphetamine. COFFEY exited the UC vehicle and returned to the Waterford Way Residence.

11. At approximately 2:08 p.m., surveillance units observed AUSTIN exit the Waterford Way building where the residence is located carrying a black duffle bag and enter the vehicle registered in his name. Moments later, the vehicle left the parking lot with AUSTIN as the sole occupant. Surveillance units followed the vehicle through the side streets of Manchester and ultimately onto I-93 southbound. At approximately 2:34 p.m., still traveling southbound on I-93, the vehicle was approaching Exit 2 in Salem, NH. Without warning, the vehicle made an abrupt exit off I-93. It then took a series of turns into and out of a business parking lot but did not stop, nor did AUSTIN exit the vehicle or meet with anyone. The vehicle eventually made its way through traffic and got back onto I-93 Southbound. Based on my training and experience,

AUSTIN appeared to be conducting counter-surveillance to see if any vehicles were following him.

12. AUSTIN's vehicle continued south on I-93 crossing into Massachusetts, eventually traveling to Mechanic Street in Lawrence, Massachusetts. At approximately 2:52 p.m., surveillance observed the vehicle pull to right side of Mechanic Street. Two males walked towards the vehicle and then quickly walked away and the vehicle left the area. Surveillance units were able to follow AUSTIN's vehicle back to Manchester where AUSTIN made numerous left and right turns in the downtown area without stopping, another counter surveillance technique, until surveillance lost sight of it.

13. At approximately 3:53 p.m., surveillance in the vicinity of the Waterford Way Residence observed the vehicle pull into the parking lot of the apartment complex, remain for less than a minute, and exit again. At the same time, the UC was in contact with COFFEY telling him he was in the lot waiting for COFFEY. COFFEY told the UC, "OK I just got it give me a sec to get it weighed out."

14. At approximately 4:04 p.m., COFFEY exited the apartment building with another individual. COFFEY walked to the UC vehicle and got into the front right passenger seat. Once inside, COFFEY provided the UC the remaining methamphetamine to complete the one-pound deal. COFFEY then exited the UC vehicle and returned inside.  Lab results confirmed that the substances purchased by the UC contained methamphetamine.

## Conclusion

7. Based on the foregoing, there is probable cause to believe that COFFEY and AUSTIN have committed the offense of conspiracy to distribute a mixture or substance

containing methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and 846.

       /s/ Robert Lukacz
       ROBERT LUKACZ
       TASK FORCE OFFICER
       DRUG ENFORCEMENT ADMINISTRATION

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: **Sep 20, 2024**
Time: **10:58 AM, Sep 20, 2024**

_____
Honorable Andrea K. Johnstone
UNITED STATES MAGISTRATE JUDGE